THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA

Felix Burgos,

            Plaintiff,

      v.

Epic Games, Inc .,

            Defendant.

Case No. 25-cv-00215

## **COMPLAINT**

Plaintiff Felix "Fefe" Burgos ("Plaintiff" or "Burgos"), by and through his undersigned counsel at Hecht Partners LLP asserts the following claims against Defendant Epic Games, Inc. ("Defendant" or "Epic"), and alleges as follows:

## I.    OVERVIEW

1.    Burgos is the author and copyright claimant of Copyright Registration Number PA0002539029, which covers the "Touching The Sky Choreography" (the "Registered Choreography").  The Registered Choreography was completed in 2024 and first published by Burgos on May 24, 2024 (on YouTube) as reflected in the Certificate of Registration (the "YouTube Video").  The YouTube Video depicting the Registered Choreography went viral after its release; it has over 9 million views as of the filing of this complaint.

2.    Through its unauthorized misappropriation of Burgos's popular dance

in its video game, Fortnite Battle Royale ("Fortnite"), Epic has unfairly profited from exploiting Burgos's Registered Choreography.

3.    Defendant capitalized on the Registered Choreography's popularity, particularly with Burgos's younger fans, by selling the Registered Choreography as an in-game purchase in Fortnite under the name "Touching The Sky," which players can buy to customize their avatars for use in the game.  This dance was immediately recognized by players as Burgos's Registered Choreography.  Despite utilizing the Registered Choreography created and popularized by Burgos, Epic did not credit Burgos nor seek his consent to use, display, reproduce, sell, or create a derivative work based upon the Registered Choreography.

4.    Since being released in or around September 2017, Fortnite has become among the most popular video games ever with revenue far more than $10 billion. Indeed, Fortnite made approximately $5.1 billion in 2020.  As a free- to-play game, Fortnite derives its sales exclusively through these types of in-game purchases. Epic should not be able to profit from Burgos's fame and hard work by its intentional misappropriation of Burgos's Registered Choreography. Burgos seeks injunctive relief and damages, including, but not limited to, Epic's profits attributed to its improper use of the Registered Choreography.

## II.    THE PARTIES

5.    Burgos resides in Gainsville, Florida.

6.     Epic is a North Carolina business corporation with its principal place of business at 620 Crossroads Boulevard, Cary, NC 27518. Epic is the creator and developer of the Fortnite video game franchise, which was first released in July 2017.

## III.    SUBJECT MATTER JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction).

8.     Venue is proper in this District under A) 28 U.S.C. § 1391(b)(2) (federal question jurisdiction), because a substantial part of the events or omissions giving rise to the claim occurred in this District; and B) 28 U.S.C. §§ 1391(b)(1) and (c) (personal jurisdiction), because the defendant is subject to personal jurisdiction in this State.

## IV.    FACTUAL BACKGROUND

### A.    Burgos and the Registered Choreography

9.     Born in Bayamon, Puerto Rico, Burgos has always been inspired by music and always wanted to be in the entertainment industry. At age 17, he was shown a video by one of his school friends of the world-famous choreographer, Lyle Beniga. He was so inspired he took his journey to New York where he met Project Valentine and Rhapsody James. He attended Broadway Dance Center and

other schools where he trained in numerous styles.

10.    Burgos is now a world-famous dancer and choreographer himself, and has performed with artists including Usher, Jennifer Lopez, Selena Gomez, Will.I.Am, New Edition, Camila Cabello.  Burgos has also choreographed artists including Chris Brown, Pia Mia and Timbaland. Most recently, he has worked with Rauw Alejandro.  He has choreographed videos including Party, Grass Ain't Greener, and assisted in Anyway and others. Burgos has vast experience across music videos, live TV, award shows, stage performances and tours.

11.    As one of the preeminent choreographers in the world, Burgos also teaches around the world.  He has taught at schools and conventions, including Millennium Dance Complex, Debbie Reynolds, Movement Lifestyle, Broadway Dance Center, Brickhouse NYC, Dance 411, Monsters Of Hip Hop, and Impact Dance.  Burgos is a full-time faculty member at Kaos Dance Convention.

12.    Burgos has also built an online empire with his numerous viral dance videos, including the YouTube Video featuring the Registered Choreography.  He has over 139,000 Instagram followers, over 16,400 YouTube subscribers, and nearly 11,000 TikTok followers as of the date of filing of this Complaint.

13.    Burgos created the Registered Choreography featured in the YouTube Video titled "Touching The Sky (Official Video)."  The video is available at: https://www.youtube.com/watch?v=LTCwm9eDY-8.    It was first published on

May 23, 2024.

14.    The Registered Choreography exploded in popularity following the release of the YouTube Video.  To date, the video has received over 9 million views and the Registered Choreography continues to maintain its popularity.

**B.    Fortnite: The Most Popular Video Game Ever**

15.    Even prior to releasing Fortnite, which would become among the most popular and successful video games ever, Epic had already developed two popular video game franchises: Unreal and Gears of War. Since releasing the first Gears of War game in 2005, Epic released several subsequent Gears of War video games, and the franchise has made has made over $1 billion in total sales.

16.    In or around 2011, following the release of the third Gears of War installment, Fortnite began from an Epic internal video game "hackathon," or a gathering of Epic developers to brainstorm ideas and create games in a short period. Although the Fortnite game was not developed during the hackathon, the idea to merge building games (*i.e.*, Minecraft) and shooter games (*i.e.*, Gears of War or Call of Duty) emerged during the hackathon.

17.    On or around July 2017, Epic released the initial version of Fortnite as a paid early-access video game. However, by September 2017, after PlayerUnknown's Battlegrounds—a game which occupied the same "battle royale" genre as Fortnite—became a worldwide success, Epic released Fortnite Battle

Royale, a free-to-play battle royale third person shooting game on the Windows, macOS, PlayStation 4 and Xbox One platforms. Epic subsequently released Fortnite on the iOS, Nintendo and Android platforms on April 2, 2018, June 12, 2018, and August 9, 2018, respectively.

18.    Like PlayerUnknown's Battlegrounds, Fortnite utilizes the battle royale format where up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive.  Fortnite now includes more than just battle royale play, including entertainment options like concerts. In 2019, an electronic music producer and DJ, Marshmello, performed at Fortnite's first-ever "virtual" concert at "Pleasant Park," a virtual location in Fortnite.  In 2020, the official Fortnite account tweeted that "[o]ver 12.3 million concurrent players participated live in Travis Scott's Astronomical," which was described as "an all-time record."

19.    As a free-to-play video game, Epic allows players to download and play Fortnite for free. Fortnite is supported by in-game transactions where players can purchase virtual currency, called "Vinderbucks" or "V-Bucks." The players in turn use V-Bucks to purchase customizations in an electronic marketplace for their in-game avatars.   These customizations include new characters, pickaxe modifications, glider skins, clothes and emotes (dances). Fortnite also sells "Battle Passes" or additional levels that allow you to unlock skins, gliders, and emotes unique to that Pass. Fortnite offers four pricing levels for purchasing V-Bucks:

1) 1,000 V-Bucks for $9.99;

2) 2,500 (+300 Bonus) V-Bucks for $24.99;

3) 6,000 (+1,500 Bonus) V-Bucks for $59.99; or

4) 10,000 (+3,500 Bonus) V-Bucks for $99.99.

20.    There are four types of emotes: common emotes, uncommon emotes, rare emotes, and epic emotes. The rarer the emote, the more expensive or harder it is to obtain. Uncommon emotes cost 200 V- Bucks. Rare emotes cost 500 V-Bucks. And epic emotes cost 800 V- Bucks.

21.    To start, Fortnite provides each player with the Dance Moves emote, a common emote, for no compensation. Players can then obtain other emotes by purchasing and playing additional levels in Battle Passes (950 V-Bucks each) that come with emotes unique to that Pass, or by purchasing certain emotes directly with V-Bucks. On some occasions, Fortnite sells Battle Pass emotes directly, without requiring the player to purchase the Battle Pass.

22.    Emotes are sold in Fortnite's electronic marketplace.  It is like Amazon.com, but it only sells *virtual* products, like emotes, which work in Fortnite's "metaverse."  Players can utilize emotes both in the battle royale and in concerts or other activities.

23.     As depicted below, players can purchase currency in the Fortnite electronic storefront:



24.     The top of the screen above indicates several "tabs" that may be selected by players, including "Battle Pass," "Item Shop" and "Store."  These features comprise the Fortnite electronic marketplace; they are different than the Fortnite Battle Royale itself, in which players can play the "game."

25.     In the electronic marketplace, players can browse, or purchase, items (like emotes) in the Item Shop or view details about the current Battle Pass available for purchase.  Players can select icons that represent various features that are available (for purchase).

26.   For example, the following icon represented the Touching The Sky dance emote.



27.    Upon clicking this icon, the emote is demonstrated in the storefront on
an avatar (which dances), similar to clothing being displayed on a mannequin.



28.    After viewing or purchasing items and customizing their avatars,
players can proceed to play the battle royale game.  When a player's character is
victorious, or otherwise, Fortnite permits the player to utilize an emote to convey a
reaction.  Below is a screenshot of actual gameplay:



29.    Players are also able to perform emotes during virtual concerts that take place from time to time in Fortnite; this is reflected in the storefront, which indicates that the emote can be used in Fortnight Festival.

30.    Emotes are incredibly popular and are fundamental to Fortnite's success.   Emotes are purchased, alongside clothing and skins, to personalize players' Fortnite experience. Emotes have also become popular outside Fortnite and influence popular culture. Professional athletes in soccer and other sports have based their celebrations on Fortnite emotes.   Young adults, teenagers, and kids also post videos of themselves on YouTube and social media performing emotes under various hashtags, including #fortnitedance or #fortnitevideos.   This may be problematic where, as here, a choreographer is not credited for the choreography misappropriated by Epic.

31.    Upon information and belief, Epic has created emotes by copying and coding dances and movements from popular videos, movies, and television shows without consent.  Epic does so by either tracing frames of the source material or directing performers to copy the movement for motion capture and coding.

32.    However, Epic has consistently sought to exploit entertainers and choreographers by copying their dances and movements. For example, Epic has copied the dances and movements of Donald Faison's signature dance seen on the

NBC television show Scrubs (named the "Dance Moves" emote), and, most pertinent here, Burgos's Registered Choreography. Upon information and belief, Epic did not seek consent or authorization for the use of many movements and dances it has packaged as emotes over the years.

33.    In 2018, several lawsuits were filed against Epic in connection with its misappropriation of dances and movement in Fortnite. There was an "outcry on social media," as recognized by Forbes contributor Oliver Herzfeld, who covered the litigations in a Forbes article titled, "Fortnite Sued Over Swiped Dance Move." The article, which was published on December 11, 2018, concluded that, to a certain extent, the first of the artists to sue Epic, rapper 2 Milly, for misappropriation of his dance, had "already prevailed in the court of public opinion."

34.    In 2023, the Ninth Circuit Court of Appeals reversed the dismissal of Kyle Hanagami's copyright claim against Epic. Hanagami published a five-minute video on YouTube featuring himself and others dancing to the song "How Long" by Charlie Puth, and in 2021, he registered the "How Long" choreography with the United States Copyright Office. Hanagami sued Epic for copyright infringement, claiming that a portion of his "How Long" choreography was copied in Fortnite. Specifically, Hanagami claimed that one such emote, called "It's Complicated," copied a roughly two-second, four-beat sequence of Hanagami's choreography

(referred to as the Steps). On Epic Games' motion to dismiss Hanagami's claims, the district court found that the Steps were composed of "a number of individual poses" that "when viewed in isolation" were not protectable under the Copyright Act. The district court also held that when viewed as a whole, Hanagami's choreography was not substantially similar to the "It's Complicated" emote and therefore granted Epic Games' motion to dismiss. Hanagami appealed the decision to the Ninth Circuit.

35.    The Ninth Circuit began its opinion by reflecting on the historical treatment of choreographic works under federal copyright law, noting that prior to the 1976 Copyright Act, they were only protectable as "dramatic compositions," requiring the depiction of some story or emotion. Although the 1976 Act provided express statutory protection for "choreographic works," it did not define the term "choreography." For this, the Ninth Circuit adopted definitions set forth in the Compendium of U.S. Copyright Office Practices, which defines "choreography" as "the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole." The Compendium also draws a distinction between "choreography" and "dance," and the court noted the existence of a continuum ranging from copyrightable choreography to uncopyrightable dance steps or elements, which, like individual words or music notes, are the "building blocks of choreographic expression."

36.     With that background, the Ninth Circuit turned to the primary issue on appeal: whether the district court correctly applied the circuit's "extrinsic test" in assessing whether Hanagami's choreographic work and the "It's Complicated" emote were substantially similar. Under the Ninth Circuit extrinsic test, a court "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." Hanagami challenged the district court's process of filtering the protectable and unprotectable elements of his choreography and its approach of reducing the choreographic work to a series of unprotectable "individual poses," arguing that "choreography is much more than a 'static collection of poses,' and that the court failed to consider many other 'expressive elements of [the] choreography.'"

37.     The Ninth Circuit agreed with Hanagami. It explained that breaking choreography down into individual "poses" is contrary to how the courts analyze other copyrightable art forms, such as musical compositions. Choreography, like photography, comprises numerous elements that are themselves not protectable under copyright law. Those elements may, in the aggregate, be protectable, the Ninth Circuit explained, based on the "particular way in which the artistic elements form a coherent pattern, synthesis, or design." The Ninth Circuit, therefore, held that the district court erred in breaking down Haganami's choreography into a series of poses. Rather, the Ninth Circuit was persuaded by Hanagami's argument that

choreography contains several other expressive elements, including "body position, body shape, body actions, transitions, use of space, timing, pauses, energy, canon, motif, contrast, [and] repetition." While acknowledging that not all choreographic works will use the same elements or that a discrete list of elements should be specified, the court emphasized that it is a choreographer's "creative approach of composing and arranging" dance movements and patterns that defines the work. Finding that Hanagami plausibly alleged that his creative expression was substantially similar to Epic's emote and that the district court erred in ignoring creative elements of Hanagami's work beyond the individual poses, the Ninth Circuit reversed the district court's dismissal of the case.

38.    Hanagami also appealed the district court's holding that his steps as a whole are not protectable because they were a "short" dance routine that comprises only a "small component" of Hanagami's full work. The Ninth Circuit again agreed with Hanagami, noting that "the proper inquiry does not turn on the mere length of the copied material" but rather looks to the significance of the allegedly copied material. Here, the court found that Hanagami had plausibly alleged that his steps have a qualitative significance to his choreographic work as a whole. Moreover, the Ninth Circuit found that Hanagami had adequately pleaded that the steps were more complex than "simple routines" that do not warrant copyright protection.

39.    The Epic lawsuits alerted the public at large of the existence of

copyright protection for choreography, which led choreographers like Burgos to register the Registered Choreography.

40.    On information and belief, because of the lawsuits, Epic began to approach some artists about licensing choreography.   However, on further information and belief, Epic typically approaches young and/or less sophisticated artists, like those who are catapulted to fame on social media platforms like TikTok, about licensing choreography for pennies on the dollar.  Burgos, a sophisticated businessman and established choreographer who is aware of the value of his choreography generally and the Registered Choreography specifically, was *never* approached by Epic about a license.

41.    Fortnite has brought Epic overwhelming success and billions upon billions of dollars.  The game eclipsed 10 million players merely two weeks after its release; by July 2018, 125 million players were active. In November 2018, Bloomberg announced that Fortnite had 200 million player accounts across all platforms.

42.    Fortnite's popularity has translated into record sales for Epic. Analysts have estimated that since its release, Fortnite has generated between $1 billion to $2 billion in revenue through in-game purchases such as emotes. In May 2018, Fortnite broke its own record by generating approximately $318 million in revenue, the biggest month ever for a video game. In fact, nearly 80 million people played

Fortnite in August 2018. Because of Fortnite's success, Epic's estimated valuation rose from about $825 million to about $5 billion in 2018. In April 2021, Epic announced its equity valuation was a staggering $28.7 billion. Yet despite all that money, Epic is unwilling to pay artists and creators like Burgos their fair share for blatantly using their intellectual property.

**C.    Fortnite's Unauthorized Use of the Registered Choreography**

43.    On February 9, 2025, Fortnite released Chapter 6, Season 1 along with the "Touching The Sky" emote.

44.    The "Touching The Sky" emote could be purchased for 500 V-Bucks when listed in the Item Shop. It was last available as recently as May 8, 2025.

45.    Epic's "Touching The Sky" emote contains Burgos's Registered Choreography. If obtained or purchased, the Fortnite player's avatar can perform the choreography during Fortnite gameplay, even after the emote is no longer listed in the Item Shop.

46.    Upon its release, the reaction from many players worldwide was immediate recognition of the "Touching The Sky" emote as embodying the Registered Choreography while others likely believed it was Epic's original creation.

47.    Upon information and belief, Epic intentionally developed the "Touching The Sky" emote to intentionally duplicate the Registered Choreography.

48.    Epic's brazen infringement of the Registered Choreography is undeniable.



49.    The above photo examples are illustrative and are not intended to

reduce the choreography to a series of static poses or isolated movements. Rather, they serve only to visually demonstrate the inclusion of couple of the key elements from Burgos's Registered Choreography in Epic's "Touching The Sky" emote. As reflected in the Ninth Circuit's opinion in *Hanagami v. Epic Games*, choreography must be assessed as a cohesive, expressive work—not deconstructed into individual still frames or simplified movements devoid of context. Choreographic works derive their protectability not from any single position or step but from the unique combination and arrangement of expressive elements—such as timing, transitions, energy, and spatial patterns—that together reflect the choreographer's creative vision. Accordingly, limiting the analysis to two photographs would mischaracterize the nature of the infringement and the artistry at issue. For a fuller depiction of the infringing material, an example is available on YouTube at https://youtu.be/DvAtVn0wr2w.

50.    Epic did not seek to obtain Burgos's authorization or consent for its use of the Registered Choreography for the "Touching The Sky" emote.

51.    Moreover, Burgos did not give Epic express or implied consent for its use of the choreography for the "Touching The Sky" emote. Epic also did not compensate Burgos for its use of his Registered Choreography for the "Touching the Sky" emote.

52.    Upon information and belief, Epic added the "Touching The Sky"

emote to intentionally exploit the popularity of Burgos and his Registered Choreography without providing Burgos any form of compensation.

53.    Epic profited from its improper misappropriation of the Registered Choreography, *inter alia*: 1) selling the infringing "Touching The Sky" emote directly to players; 2) advertising the "Touching The Sky" emote to attract additional players, including Burgos's fans or those persons familiar with the Registered Choreography to play Fortnite and make in-game purchases; 4) staying relevant to its current players to incentivize those players to continue playing Fortnite; 5) impliedly representing that Burgos consented to Epic's use of the Registered Choreography; 6) creating the false impression that Burgos endorsed Fortnite; and 7) inducing and/or contributing to Fortnite players' avatars performing the Registered Choreography.

54.    Upon information and belief, Epic uses the Registered Choreography, and other dances, to create the false impression that Epic started these dances and crazes or that the artist who created them is endorsing the game. Accordingly, upon information and belief, Epic actively and knowingly directs, causes, induces, and encourages others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Burgos's Registered Choreography.

55.    Burgos did not consent or approve Epic's use of his Registered

Choreography for the "Touching The Sky" emote. Other prominent artists, including Chancelor Bennett, known as Chance the Rapper, have also publicly disapproved of Epic's practices, and advocated for Epic sharing profits with the artists that created the dances Epic has misappropriated.

56.    Accordingly, Epic made a fortune from unlawfully and unfairly misappropriating Burgos's and other artists' creative expression and likeness without crediting or compensating these artists. Burgos thus brings this lawsuit to prevent Fortnite from further using his Registered Choreography, and to recover the profits rightfully owed to him.

## FIRST CAUSE OF ACTION

## (For Direct Infringement of Copyright - 17 U.S. Code § 501)

57.    Burgos hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

58.    On or around May 23, 2024, a video titled "Touching The Sky (Official Video)" was published to YouTube where it was able to be accessed by millions of people. The YouTube Video shows the Registered Choreography.

59.    Burgos is the undisputed creator of the wildly popular and immediately recognizable Registered Choreography. Burgos's video fixed the Registered Choreography in a tangible medium.

60.    Burgos applied for a copyright registration on the choreography

depicted in the YouTube Video on July 3, 2025, under the title "Touching The Sky - Choreography."  Burgos deposited a copy of the YouTube Video with the application.  The Copyright Office registered the choreography within days. Registration No. PA 2-539-029 was granted an effective date of registration of February 25, 2025 with a registration decision date of July 8, 2025.

61.    Defendant has infringed (and may continue to infringe) Burgos's Registered Choreography by (1) selling the "Touching The Sky" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "Touching The Sky" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "Touching The Sky" emote as a derivative work of the Registered Choreography.

62.    Defendant did not seek to obtain Burgos's permission for its use of the Registered Choreography for the "Touching The Sky" emote. Nor has Defendant compensated or credited Burgos for its use of the Registered Choreography.

63.    Moreover, Defendant actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to

misappropriate Burgos's Registered Choreography.

64.    Defendant's acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

65.    Defendant's willful and continued unauthorized use of the Registered Choreography for commercial gain has caused and will continue to cause confusion and mistake by leading the public to erroneously associate the "Touching The Sky" emote offered by Epic with the Registered Choreography in violation of 17 U.S.C. §§ 101 *et seq.*

66.    As a result of Defendant's conduct, Burgos has been damaged by being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Burgos's Registered Choreography in Fortnite.

67.    Burgos is entitled to permanent injunctive relief preventing Defendant, and its officers, agents, and employees, and all related persons from further using the Registered Choreography and engaging in other acts in violation of copyright law.

68.    As a direct and proximate result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under copyright, Burgos is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendant as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

69.     In doing the acts herein alleged, Defendant acted fraudulently, willfully, and with malice, and Burgos is therefore entitled to punitive damages according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### (For Contributory Infringement of Copyright)

70.     Burgos hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

71.     On or around May 23, 2024, a video titled "Touching The Sky (Official Video)" was published to YouTube where it was able to be accessed by millions of people.  The YouTube Video shows the Registered Choreography.

72.     Burgos is the undisputed creator of the wildly popular and immediately recognizable Registered Choreography. Burgos's video fixed the Registered Choreography in a tangible medium.

73.     Burgos applied for a copyright registration on the choreography depicted in the YouTube Video on July 3, 2025, under the title "Touching The Sky - Choreography."   Burgos deposited a copy of the YouTube Video with the application.   The Copyright Office registered the choreography within days. Registration No. PA 2-539-029 was granted an effective date of registration of February 25, 2025 with a registration decision date of July 8, 2025.

74.     Defendant has infringed (and may continue to infringe) Burgos's

Registered Choreography by (1) selling the "Touching The Sky" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "Touching The Sky" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "Touching The Sky" emote as a derivative work of the Registered Choreography.

75.    By providing the "Touching The Sky" emote necessary for its players to commit copyright infringement, Defendant has and continues to materially contribute to the unauthorized reproductions and distributions by its players of the Registered Choreography.

76.    Defendant did not seek to obtain Burgos's permission for its use of the Registered Choreography for the "Touching The Sky" emote. Nor has Defendant compensated or credited Burgos for its use of the Registered Choreography.

77.    Moreover, Defendant actively and knowingly directed, caused, induced, and encouraged others, including, but not limited to, its players, designers, suppliers, distributors, resellers, software developers, and repair providers, to misappropriate Burgos's Registered Choreography.

78.    Defendant's acts of infringement have been willful, intentional, and

purposeful, in disregard of and with indifference to Plaintiff's rights.

79.    Defendant's willful and continued unauthorized use of the Registered Choreography for commercial gain has caused and will continue to cause confusion and mistake by leading the public to erroneously associate the "Touching The Sky" emote offered by Epic with the Registered Choreography in violation of 17 U.S.C. §§ 101 et seq.

80.    As a result of Defendant's conduct, Burgos has been damaged by being precluded from receiving his rightful share of the profits earned by Epic for its improper and unlicensed use of Burgos's Registered Choreography in Fortnite.

81.    Burgos is entitled to permanent injunctive relief preventing Defendant, and its officers, agents, and employees, and all related persons from further using the Registered Choreography and engaging in other acts in violation of copyright law.

82.    As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Burgos is also entitled to recover damages, including attorneys' fees, and any profits obtained by Defendant as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

83.    In doing the acts herein alleged, Defendant acted fraudulently, willfully, and with malice, and Burgos is therefore entitled to punitive damages

according to proof at the time of trial.

## THIRD CAUSE OF ACTION

## (Unfair Competition Under Florida Deceptive and Unfair Trade Practices Act (FDUTPA) – Fla. Stat. § 501.201 et seq.)

84.     Burgos hereby repeats and realleges the allegations set forth in the preceding paragraphs, above, as though fully set forth herein.

85.     By misappropriating Burgos's dance and through the improper copying and use of the Registered Choreography, Defendant as engaged in business acts or practices that constitute unfair competition in violation of Fla. Stat. § 501.201 et seq.

86.     As a result of Defendant's violations, Defendant has unjustly enriched itself by: (1) selling the "Touching The Sky" emote as an in-game purchase that, if purchased, a player can use to make his or her avatar perform during Fortnite gameplay; (2) copying the "Touching The Sky" emote to its servers and/or causing the emote to be copied to other devices for access and performance by players' avatars; (3) substantially copying the Registered Choreography in digital form to the Fortnite game; (4) advertising the Registered Choreography in its electronic storefront and promotional materials; and (5) creating the "Touching The Sky" emote as a derivative work of the Registered Choreography.

87.     As a result of Defendant's conduct, Burgos has been damaged by being

precluded from receiving his rightful share of the profits from selling or licensing his exclusive copyright.

88.    Burgos is entitled to permanent injunctive relief preventing Defendant, and its officers, agents, and employees, and all related persons from further using his Registered Choreography.

89.    Burgos is also entitled to recover damages, including any profits obtained by Defendant as a result of the infringements alleged above, in an amount according to proof to be determined at the time of trial.

## PRAYER FOR RELIEF

As to the First Cause of Action:

1.    For an order restraining Defendant from using, selling, or displaying Burgos's Registered Choreography in its Fortnite game;

2.    For an award of damages according to proof;

3.    For punitive and/or exemplary damages;

4.    For attorney's fees and costs;

As to the Second Cause of Action:

5.    For an order restraining Defendant from using, selling, or displaying Burgos's copyright in its Fortnite game;

6.    For an award of damages according to proof;

7.    For punitive and/or exemplary damages;

8.      For attorney's fees and costs;

As to the Third Cause of Action:

9.      For an order restraining Defendant from using, selling, or displaying

Burgos's Registered Choreography in its Fortnite game;

10.     For an award of damages according to proof;

11.     For punitive and/or exemplary damages;

12.     For attorneys' fees and costs;

As to All Causes of Action:

13.     For costs of suit; and

14.     For such other and further relief as the Court may deem proper.


Dated: July 30, 2025                        Respectfully Submitted,

                                            HECHT PARTNERS LLP


                                            By: */s/David L. Hecht*
                                                David L. Hecht
                                                Hecht Partners LLP
                                                125 Park Avenue, 25th Floor
                                                New York, NY 10017
                                                Tel: 212-851-6821
                                                Email: dhecht@hechtpartners.com


                                            *Attorneys for Plaintiff Felix Burgos*